UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAM KLIEBERT, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2250 |
| | § | |
| METALLICUS, INC; aka METAL | § | |
| MARSHALL HAYNER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Remington Reynolds, Trevor Short, and Premier Tennis Group, LLC d/b/a Premier Live ("Premier Defendants") Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2). After reviewing the motion, response, reply, and applicable law, the Court **GRANTS** the motion.

**I. Background**

Plaintiffs Adam Kliebert, Gloria Blake and Glenn Blake (collectively "Kliebert and the Blakes") allege that Defendant Metallicus ("Metallicus") is a cryptocurrency company which created the cryptocurrency "Metal." Dkt. 5-1 (Plaintiffs' Original Petition, or "Pet.")) ¶ 13. The petition alleges that Plaintiff Adam Kliebert attended the 2017 Necker Cup, a tennis tournament held on Necker Island, where he met the Premier Defendants.[1] Pet. ¶¶ 11, 19–20; Dkt. 12-1 ¶ 5. Kliebert and the Blakes allege that they

---

[1] Plaintiffs allege that Kliebert met Defendants at the Neckar Cup on Neckar Island, British Virgin Islands. Defendants state that these allegations are incorrect, and that the

purchased Metal from Metallicus, ultimately investing hundreds of thousands of dollars, based on misleading representations that Metallicus and the Premier Defendants made at the Necker Cup. Pet. ¶¶ 19–21. In their petition, Kliebert and the Blakes assert claims for violations of the Texas Securities Act and the Texas Deceptive Trade Practices Act, fraud, fraudulent inducement, and negligent misrepresentation. Pet. at 5–11. They seek damages, attorneys' fees, and costs. Pet. at 12–13.

The petition names as defendants, among others, the Premier Defendants: Remington Reynolds and Trevor Short, who reside in Atlanta, Georgia; and Premier Live, a business name used by Reynolds and Short. Pet. ¶ 2–6. Plaintiffs allege that the Premier Defendants promote and direct the Necker Cup, and that as part of the 2017 Necker Cup, the Premier Defendants arranged to promote Metal and receive a commission for any Metal sold as a result. Pet. ¶¶ 12–15. Kliebert and the Blakes allege this Court has personal jurisdiction over the Premier Defendants "because they do business in the State of Texas, and because all or a substantial portion of the events giving rise to this case occurred in Texas." Pet. ¶ 9. They also allege that the Premier Defendants offered and sold securities (the units of "Metal") to residents of the state of Texas and offered and sold securities within the state of Texas. Pet. ¶¶ 27, 29.

The Premier Defendants now move to dismiss this action against them. These defendants argue that the Court lacks personal jurisdiction over them because (1) they are non-residents of Texas and they have not purposefully established minimum contacts

---

2017 Necker Cup (spelled with an "e" rather than an "a") took place in the Bahamas. These differences in spelling and location are immaterial to the relief sought in Defendants' motion.

with Texas, the forum state, and (2) exercising personal jurisdiction over them would not comport with fair play and substantial justice. *See generally* Dkt. 5.

## II. Applicable Legal Standards

### A. Rule 12(b)(2)

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When personal jurisdiction is challenged, the plaintiff "bears the burden of establishing the district court's jurisdiction over the defendant." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Id.* at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts. *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law" to be determined by

the Court. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

### B. Personal Jurisdiction

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents 'doing business' in Texas," and "[t]he Texas Supreme Court has interpreted the 'doing business' requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution permits." *Grundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). Thus, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant "purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," and (2) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214–15 (5th Cir. 2000).

"Minimum contacts" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction. *Alpine View*, 205 F.3d at 215. Specific jurisdiction over a nonresident is appropriate when the defendant has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). General jurisdiction will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are "continuous and systematic." *Alpine View*, 205 F.3d at 215 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)).

### III.  Analysis

Kliebert and the Blakes assert that the Premier Defendants have minimum contacts with the State of Texas sufficient to confer specific jurisdiction because Kliebert and the Blakes are Texas residents and the Premier Defendants promoted Metal to them and received commissions from these sales. The Court disagrees.

The first alleged contact between Kliebert and the Premier Defendants occurred when Plaintiff Adam Kliebert saw a Metallicus presentation and met Premier Defendant Trevor Short at the Necker Cup, outside of Texas. Pet. ¶¶ 16–18; Dkt. 12-1 ¶ 5. The petition does not allege any facts showing that the Premier Defendants directed activities promoting or marketing Metal to Texas residents beyond the Necker Cup. *See generally* Pet. In response to the motion to dismiss, Kliebert only testifies by affidavit that "[a]s a direct result of the PL Defendants' marketing efforts, I invested several times in Metal

through Metallicus, Inc." and "[m]any of these investments took place while I was in Texas." Dkt. 12-1 at. 4, ¶¶ 8–9.

The parties dispute whether the Premier Defendants knew that Kliebert was a Texas resident. The Court resolves any factual conflicts in favor of Kliebert and the Blakes. *See Guidry*, 188 F.3d at 625. Accordingly, for purposes of deciding this motion, the Court assumes that the Premier Defendants knew Kliebert was a Texas resident.[2]

The Court nonetheless finds that Kliebert and the Blakes have not alleged facts showing that the Premier Defendants had minimum contacts with Texas sufficient for the Court to exercise personal jurisdiction over them. Kliebert and the Blakes' assertion of personal jurisdiction hinges on the mere fortuity that they are Texas residents. That is not enough to confer jurisdiction. *See, e.g.*, *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (granting motion to dismiss for lack of personal jurisdiction where foreign defendant entered into contracts with plaintiff knowing from the outset that plaintiff was a Texas resident and sending an executive to visit Texas in furtherance of performing the contract); *see also Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 (5th Cir. 2004) (affirming dismissal for lack of personal jurisdiction over defendants whose "sole connection to this case involves [a] meeting in New York in which [defendant] allegedly made fraudulent statements to plaintiffs").

---

[2] The affidavit of Adam Kliebert attests that he told Trevor Short he was a Texas resident while attending the Necker Cup. Dkt. 12-1 ¶ 5. However, Kliebert and the Blakes do not allege or attest that the Premier Defendants knew that the Blakes were Texas residents. *See generally id.*; *see also* Dkt. 12-1 at 3–4. Defendants Remington Reynolds and Trevor Short attest in affidavits that they did not know that either Kliebert or the Blakes were Texas residents. Dkt. 5-1 ¶ 14; Dkt. 5-2 ¶ 13.

"The mere allegation that an out-of-state defendant has . . . committed . . . business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). Kliebert and the Blakes still must show the defendants' purposeful availment of the benefits and protections of, and minimum contacts with, the forum state to establish a *prima facie* case of specific personal jurisdiction. *Id.* In this case they have not made this showing. *See Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 189 (5th Cir. 1978) (affirming dismissal for lack of personal jurisdiction because "isolated sales did not involve purposeful conduct within [the forum state] so as to avail [defendant] of the benefits and protections of [that state]'s laws").

The unpublished Texas Courts of Appeals decisions cited by Kliebert and the Blakes do not require a different result. *See* Dkts. 12-1, 12-2 (attaching *Am. Preferred Servs., Inc. v. Harrison ex rel. Allen*, Civ. Action 07-11-0065, 2011 WL 4485463, at *2 (Tex. App.—Amarillo Sept. 28, 2011, no pet.); *Santy v. McElroy*, Civ. Action 03-00-00368, 2001 WL 838400, at *5 (Tex. App.—Austin July 26, 2001, no pet.). In *Allen*, plaintiffs' claims arose out of plaintiffs' engagement of defendants' estate planning services, including creation of an annuity. *Allen*, 2011 WL 4485463, at *2. Plaintiffs alleged that the defendant acted as an administrator for a party to the annuity, performed requisite steps to secure a binding contract, knowingly reaped financial benefit from the plaintiffs, and expected to perform any ministerial duties related to the contract the plaintiffs needed. *Id.* at *3. As part of securing the contract, the defendant knew that an

intermediary acting on its behalf purposefully created documents needed to consummate a deal in Texas. *Id.* at *2. The *Allen* court also noted that parties to an annuity foresee or expect a long-term relationship. *Id.* at *3. Those facts and circumstances are not present in this case.

*Santy* is also distinguishable. In that case, plaintiffs alleged that several defendants were associated with the sales of Texas real estate properties to certain partnerships, which were allegedly conspiring to conceal the nature of the real estate sales. *Santy*, 2001 WL 838400, at *1. The defendants challenging personal jurisdiction had maintained ties with Texas by various means regarding the relevant Texas real estate transactions over a period of years, were involved with the other Texas defendants in planning the sales, and had visited Texas numerous times to see the relevant properties. *Id.* at *6. Those facts are not alleged in this case.

Kliebert and the Blakes have not shown that the Premier Defendants had minimum contacts within Texas sufficient to establish personal jurisdiction over them, so the Court need not determine whether the assertion of personal jurisdiction would comport with traditional notions of fair play and substantial justice.

## IV. Conclusion

Accordingly, the Premier Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 5) is **GRANTED**. The claims against the Premier Defendants are **DISMISSED WITHOUT PREJUDICE** to re-filing in an appropriate forum.

SIGNED this day 3rd day of April, 2020.

_____
George C. Hanks Jr.
United States District Judge